**IN THE THIRTEENTH JUDICIAL CIRCUIT**
**IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**
**CIVIL DIVISION**

CREMA FINA, INC.

      Plaintiff,

                              Case No.:

v.

DIRECT INTERNATIONAL WINE & SPIRITS
OF FLORIDA, LLC d/b/a MEXCOR DISTRIBUTORS
OF FLORIDA, a Foreign Limited Liability Company,
MESK & CO., a Florida Profit Corporation,
LIAL DRINKS, S.L., a Foreign Corporation,
JOSE ESPADAFOR, an individual,
EDUARDO MORALES, an individual,
NICHOLAS ALEXANDER, an individual,
PABLO PEREZ, an individual, RUTH PEREZ, an
individual, and, MAURO VARENA, an individual,

      Defendants.

_____/

**COMPLAINT FOR DAMAGES**
**AND DEMAND FOR JURY TRIAL**

      Plaintiff, Crema Fina, Inc. ("Crema Fina"), hereby sues Defendants, Direct International

Wine & Spirits of Florida, LLC d/b/a Mexcor Distributors of Florida ("MexCor") Mesk & Co.

("Mesk"), Lial Drinks, S.L ("Lial"), Jose Espadafor ("Espadafor"), Eduardo Morales ("Eduardo"),

Nicholas Alexander ("Alexander"), Pablo Perez ("Pablo"), Ruth Perez ("Ruth") and Mauro Varena

("Varena") (collectively the "Defendants") and alleges as follows:

      1.      This is an action for violation of Florida's Deceptive and Unfair Trade Practices

Act, common law unfair competition, common law trade dress infringement, and a civil conspiracy

against Defendants arising out of and in connection with Florida State Law with regard to the

Defendants' fraudulent scheme, improper agreement, conspiracy, and efforts to create a replica

product that infringes upon Crema Fina's common law trade dress rights and to further compete unfairly under applicable law to damage Plaintiff.

## PARTIES

2.      Crema Fina is a Florida corporation with its principal place of business in Tampa, Hillsborough County, Florida.

3.      MexCor is a Texas Limited Liability Company that conducts substantial business within the State of Florida with a principal address and place of business in Medley, Miami-Dade, County, Florida.

4.      Lial Drinks, S.L. is a Spanish corporation that does substantial and not isolated business with the State of Florida and United States via the shipment and importation and sale of its distilled wines and spirits including the Product, as identified below, and the CDV replica product.

5.      Mesk is a Florida corporation based in Homestead, Miami-Dade, County, Florida.

6.      Espadafor is the owner of Lial and a resident of Spain that conducts substantial and not isolated activity in Florida and the United States via his business activities individually and on behalf of Lial.

7.      Eduardo Morales ("Morales"), who lives in Houston, Texas, owns, operates and controls MexCor and has substantial contacts and individualized activity in the State of Florida via MexCor and otherwise.

8.      Nicholas Alexander ("Alexander") is the President of MexCor who lives in Miami-Dade County.

9.      Pablo Perez is the Vice President of Sales for MexCor who lives in Miami-Dade County and the is the husband of Ruth, an owner of Mesk.

2

10.     Ruth Perez is an owner of Mesk, and the wife of Pablo, who lives in Miami-Dade County.

11.     Mauro Varena is an owner of Mesk who lives in Miami-Dade County.

### JURISDICTION, VENUE

12.     This Court has subject matter jurisdiction of this matter given that the amount in controversy exceeds the sum or value of $50,000.00, exclusive of costs, interest and reasonable attorneys' fees.

13.     Venue is proper in this Court because the claims and causes of action accrued in Hillsborough County, Florida.

14.     In addition, venue is proper in this Court pursuant to Florida Statute §47.011 because the causes of action sued upon accrued in Hillsborough County, Florida.

15.     This Court has personal jurisdiction over Defendants because the events or omissions that gave rise to Plaintiff's claims occurred in Hillsborough County, Florida and/or with their intended effects in Hillsborough County, Florida.

16.     Further, this Court has personal jurisdiction over Defendants and venue is proper in this Court because Defendants were members of a conspiracy to commit tortious acts in Hillsborough County, Florida, and certain tortious acts complained of herein were committed in Tampa, Florida as detailed below.

17.     This Court has personal jurisdiction over Defendants:

   a.  pursuant to Florida Statute §48.193(1)(a)(1) because the causes of action arise from Defendants "operating, conducting, engaging in, or carrying on a business or business venture in this state."

b. pursuant to pursuant to Florida Statute §48.193(1)(a)(2) because Defendants committed tortious acts within this state.

c. pursuant to Florida Statute §48.193(1)(a)(6) because Defendants caused injury to persons or property within this state arising out of an act or omission by the Defendants outside this state and, at the time of the injury, Defendants were engaged in service activities within this state and/or products, materials, or things, processed, serviced or manufactured by Defendants were used or consumed within this state in the ordinary course of commerce, trade, or use.

d. Pursuant to Florida Statute §48.193(2) because Defendants engage in substantial and not isolated activity within Florida.

## GENERAL ALLEGATIONS

18.    Crema Fina is a business started in 2011 by Juan Perdomo, a chemist, that developed, oversees the manufacture, and distributes a Cuban style cream liqueur alcoholic beverage, generally known as crema de vie, branded specifically as "Crema Fina" (the "Product").

19.    Crema Fina's Product first came to market in 2012 and was initially distributed by a distributor in and around the Miami, Florida area.  Crema Fina now is distributed and sold throughout Florida and various other states.

20.    In 2013, Crema Fina obtained a USPTO trademark registration, Reg. No. 85605390, for the "CREMA FINA" standard character mark used to sell the Product in international class 33 for cream-based liqueurs.

21.    Florida law provides for a three-tier system regarding the manufacture, sale and distribution of alcoholic beverages requiring, with limited exceptions, that alcoholic beverages

have separate and distinct manufacturers, distributors, and retailers.  See *Fla. Stat.* 561-569, *F.A.C.R.* 61A-1 to 61A-5.

22.    In 2014, distribution of the Product was transferred by Crema Fina to a new third-party distributor for statewide distribution in Florida, expanding its sales.

23.    Crema Fina has used distributors for the Product in Florida, North Carolina, Tennessee, New York, New Jersey, Illinois, and Georgia.

24.    In 2020, MexCor solicited and expressed an interest to Crema Fina with regard to taking over the Florida distribution of the Product.

25.    In January of 2021, as a result of such solicitation, Crema Fina moved the Florida distribution of the Product to MexCor and shared proprietary and confidential information regarding its business and the Product, including its profit margins and information regarding the Product formulation and marketing strategies.

26.    Crema Fina's sales revenues for the Product for the past three years where:

$206,197.83 in 2021;
$291,206.01 in 2022; and
$71,364.24 in 2023.[1].

27.    Crema Fina's marketing budget and expenditures to establish the Crema Fina brand and create consumer awareness of its trade dress and attributes, on an annual basis and at all times material hereto, equate to approximately 5% of its annual revenues from the gross sales numbers of the Product.

28.    Within six months of taking over as the new distributor for the Product in Florida, MexCor and its agents Alexander and Pablo proposed to Crema Fina that the Product be produced

---

[1] The precipitous decline in 2023 sales revenues is directly caused by Defendants' improper actions as complained of herein.

by a new distillery in Grenada, Spain, Lial, owned by Espadafor.   Alexand and Pablo, as agents of MexCor, represented to Crema Fina that they had a long-standing and trusted relationship with Lial and Espadafor.  The proposed change to use Lial for manufacturing of the Product was touted by Alexander and Pablo as an economically shrewd idea to reduce the manufacturing costs per bottle and, as a result, obtain more profit from Crema Fina's sales.

29.     Based upon MexCor's and its agents' suggestion and stated trusted relationship with Lial and Espadafor, Crema Fina agreed to transfer the distillation of the Product to Lial in late 2021 and actually fully transferred the distillation and production of its Product to Lial in Spain in January of 2022.

30.     Crema Fina, as part of this transfer of distillation and production of the Product in late 2021, provided confidential information via email to Lial, Espadafor and MexCor and its agents Alexander and Pablo related to the Product, including, but not limited to:

    a.   the Product formula;

    b.   the blending sheet for the Product;

    c.   raw material used for the Product;

    d.   specifications for the distillation and storage of the Product;

    e.   a flavor data sheet;

    f.   the elaboration process of making the Product; and

    g.   packaging materials, packaging designs and related parameters, including the trade dress which includes, but is not limited to, the unique shape of the Product bottle and the unique combination of colors, images and fonts on the packaging and labeling.  (collectively the "Product Information")

6

31.    In June of 2022, the United States Alcohol and Tobacco Tax and Trade Bureau ("TTB") approved the process provided to Lial by Crema Fina to allow Lial to produce and distill the Product in Spain and for sale in the United States by distributors, including MexCor.

32.    In August of 2022, Crema Fina received two purchase orders from MexCor of 1500 cases each, a total of 3000 cases, for production of the Product at Lial in Spain, which were promptly forwarded to Lial and Espadafor for distillation and production of the Product to sell in the United States.

33.    Such production of the Product by Lial and Espadafor for Crema Fina for the two purchase orders issued should, under normal circumstances, have been completed and delivered to the United States for distribution in approximately September of 2022.

34.    In late September of 2022, however, Crema Fina's Product now being produced solely by Lial pursuant to the two purchase orders had not yet arrived in Florida for distribution and sale in Florida by MexCor.

35.    Instead, in late September of 2022, Defendants jointly worked to introduce a replica product, called generically "Crema De Vie" ("CDV"), to the Florida market which in their own filings with TTB identified the brand to be "LIAL."

36.    The CDV replica product was purposefully copied from the Product and distilled by Lial in Spain as managed and operated by Espadafor, shipped by Lial to MexCor in Florida, via the importer Mesk, an associated entity with common ownership and agents, for distribution and sale in Florida in direct competition with the Product.

37.    In fact, the CDV replica product distilled by Lial was an almost exact copy of the Product based on the Product Information provided by Crema Fina to Lial and Espadafor and MexCor and its agents in late 2021 and utilized a slight variation of Crema Fina's proprietary

common law trade dress in its packaging, label and marketing to create consumer confusion with the Product.

38.     Based on the timing and manner of the introduction of the CDV replica product in late September of 2022, the TTB submissions in October of 2021, and direct involvement of each of the Defendants with the Product before such introduction to the market and dealings with the CDV replica product, Defendants acted to organize and agree to create the CDV replica, copycat product to undercut and damage Plaintiff's business tortiously and unfairly and using its trade dress and confidential information.

39.     At all times material hereto, the CDV replica product boldly and improperly uses the same or confusingly similar trade dress, including, but not limited to, its bottle shape, the same color white bottle, the colors and sizes used on fonts and imagery, and the uniquely designed "drip" graphic on the bottleneck to the Crema Fina Product, creating consumer confusion.

40.     Below is a side-by-side comparison of 2 images of Crema Fina's Product and its trade dress showing the front and back of the bottle and packaging that consists of the trade dress that would be seen by consumers.

 

41.    Crema Fina's Product appears on the right of each image and the CDV replica product trade dress is displayed on the left.  These images demonstrate the similarity of the offered products and common law trade dress infringement issues presented and which are apparent from a cursory visual comparison of the two items and the overall impressions created.

42.    Notably, the CDV copy-cat, replica product developed, produced, imported, marketed, distributed, and sold by the Defendants is nearly 100% identical in its trade dress and product formulation as the Crema Fina Product and has an identical or nearly identical flavor profile, color, and taste.

43.    The CDV replica product was imported by Mesk, which is owned by Varena and Ruth, the spouse of Pablo who is the Vice President of Sales for MexCor at all times material hereto, a company that is affiliated with, by common or related ownership of family members with agents of MexCor, and directly involved with prior business with Crema Fina related to the Product.

44.    Defendants, on information and belief, used Mesk as an importer of the CDV replica product for the primary purpose of obscuring and hiding the true nature of MexCor, Pablo,

Alexander, Espadafor, and Eduardo's ownership and underlying knowledge and involvement with the plan and conspiratorial agreement entered into by the Defendants to create, import, market and sell their infringing, copy-cat CDV replica product produced by Lial and Espadafor in Florida in improper competition with the Product.

45.    As part of Defendants' plan and agreement, the CDV replica product was also offered by Defendants and distributed at an established price point of $3.00 less than the retail price of the Crema Fina Product, which was a clear acknowledgment of Crema Fina's established Product cost and an effort to undercut Crema Fina's business based on Defendants' unique knowledge of Crema Fina's costs of goods sold, ingredient costs, and profit margins shared with each of them.

46.    A true and correct image from a retailer of an example of offering the CDV replica product at $3.00 less than Crema Fina's Product, side by side on a third-party retailer's shelf space, is below:



47.    Further, Defendants, as part of the improper plan and agreement, conspired and specifically and purposefully requested that the CDV replica product be placed by retailers on

10

shelves directly next to the Crema Fina Product to decrease sales of Crema Fina's Product and create further consumer confusion based on the infringing trade dress of the CDV replica (see image above in paragraph 46).

48.    Notably, the submissions to TTB, of the CDV replica product information including a request for certificate/exemption of label and bottle approval for a certificate of label approval ("COLA") by Defendants were made on October 7, 2021, via TTB ID 21280001000604, formula 1412173, by Varena, an owner of Mesk, almost immediately after the Product Information was shared by Crema Fina with Lial, Espadafor, MexCor and MexCor's agents Alexander and Pablo.

49.    A COLA is required from the TTB for all alcohol producers for each unique product and label used or offered in commerce to ensure compliance with Federal labeling and advertising regulations.

50.    Moreover, prior to receiving a COLA, TTB requires submission of product information for each alcoholic product, including its formula, an identification of a complete list of its ingredients, and a step-by-step description of how the product is made, to evaluate such product and determine whether to allow for its sale in the United States.

51.    Images of the set of labels submitted by Defendants to TTB on October 7, 2021, regarding the CDV replica product, based on the Product's unique and non-functional trade dress, are below:



52.     Ultimately, based on Defendants' October 7, 2021, submissions, the CDV replica's COLA was obtained from TTB on October 20, 2021, as referenced by the TTB COLA approval attached hereto as **Exhibit A.**

53.     In November and December of 2022, two months after the CDV replica product was first introduced for sale in the market in Florida, including retail stores in Hillsborough County, as part of Defendants' plan, the first and second shipments, via the two purchase orders, of the Product finally arrived at MexCor in Florida for distribution.

54.     The shipping delay was apparently part of Defendants' plan to hold up the Product and instead produce the competing, infringing CDV replica product and ship to MexCor via Mesk to introduce it for sale to the market a few months before shipping the Product to allow for Product sales with little to no shelf competition with the Product, which was purposeful and made with the direct and specific intent to directly damage Crema Fina's business and was unfair competition.

55.     As a result of the foregoing, Crema Fina sales of the Product during the 2022 season were 79% lower than comparable sales numbers of the Product in 2021, which, are directly attributable to Defendants' improper acts.

56.    All conditions precedent to the maintenance and institution of this action have occurred, have been performed, or have otherwise been satisfied.

<u>COUNT I-</u>
**FLORIDA COMMON LAW TRADE DRESS INFRINGEMENT**

57.    Crema Fina reincorporates its allegations in paragraphs 1 through 56 as if set forth more fully herein.

58.    This is a claim against Defendants, including specifically Lial, the purported owner of the brand in TTB filings, for common law trade dress infringement under Florida law.

59.    Crema Fina is the is the prior user of the trade dress established by the Product, since 2011, which consists of the overall commercial look and feel of the Product that distinguishes the source of the Product as being from Crema Fina.

60.    Crema Fina's trade dress in the Product includes, but is not limited to, the non-functional design and shape of the bottle, the color of the bottle, the fonts and colors used on the Product packaging and the images and unique "drip" top of the Product on its exterior packaging, which is distinctive and deserves protection under Florida law.

61.    Crema Fina's trade dress in the Product is inherently distinctive or has acquired secondary meaning from use in commerce since 2011.

62.    Crema Fina's trade dress in the Product does not utilize a common shape bottle or geometric design such that the shape of the bottle for the Product is unique and distinctive.

63.    Further, Crema Fina's trade dress, including the bottle shape, is not merely a refinement of commonly used or adopted ornamentation for liqueur products.

64.    The features of the Crema Fina's trade dress in the Product are primarily non-functional and protectable as the Product's trade dress under Florida law.

65.    Crema Fina's Product trade dress and Defendants' CDV copy-cat, replica product's trade dress is confusingly similar to a normal and customary consumer of the two products.

66.    Thus, Defendants are liable to Crema Fina for common law trade dress infringement with regard to the Product.

**WHEREFORE,** Crema Fina requests and Order of this Court finding that

a.    Defendants have infringed upon the Product's legally protectable common law trade dress;

b.    Defendants are enjoined from using the Product's infringing trade dress on their competing, CDV replica product;

c.    All infringing CDV labeled products be removed from circulation and not offered for sale by any channel of trade; and

d.    Crema Fina be awarded Defendants' profits with regard to the infringing sales of the CDV replica product; and,

e.    Crema Fina, in addition to Defendants' profits, be awarded its actual damages;

<u>**COUNT II-**</u>
<u>**FDUTPA**</u>

67.    Crema Fina realleges and incorporates herein by reference the allegations of 1 through 56 as if set forth fully herein.  This is a cause of action by Crema Fina against Defendants for a violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.204, 501.2105 ("FDUTPA").

68.    FDUTPA makes illegal "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Fla. Stat. § 501.204(1).

14

69.    An unfair practice has been defined as "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Webber v. Bactes Imaging Sols., Inc.*, 295 So. 3d 841, 844 (Fla. 2d DCA 2020), *review denied*, No. SC20-825, 2020 WL 6375593 (Fla. Oct. 30, 2020) (quotation omitted).

70.    Crema Fina presented each of the Defendants with access to and information regarding its unique Product in the Product Information and trade dress provided and otherwise and they copied and created an infringing, copy-cat replica product, CDV, to improperly undercut and compete with Crema Fina as early as October of 2021 using its common law trade dress.

71.    Defendants attempted to obscure and hide their direct involvement with the creation, distillation, imporation, marketing, distribution, and sale of the CDV replica product by using Mesk and other persons and entities, demonstrating their willfulness and bad faith and knowledge of Crema Fina's rights.

72.    As such, Crema Fina is owed damages for Defendants' unfair and deceptive acts to orchestrate and participate in a conspiracy and agreement by which they willfully and purposefully infringed upon the Product's trade dress and copied the Product, attempted to obscure their involvement in such replica product, and are attempting to damage or destroy Crema Fina, improperly by delaying its shipments and undercutting its prices, using confidential information.

73.    Defendants' actions in the purposeful and malicious copying, delaying, and the price undercutting of Crema Fina's Product, while proceeding with TTB to obtain approval and a COLA as early as October of 2021, and attempting to hide their involvement, is a malicious, clear and shameless attempt by Defendants to destroy and drive Crema Fina out of business and are deceptive or unfair and constitute immoral, unethical, oppressive, and unscrupulous conduct in Defendants' trade or business.

74.    Defendants' unconscionable, deceptive, and unfair practices, as set forth above, directly resulted in harming Crema Fina's sales and reputation in a manner that was not remote or speculative and such acts would be deemed unconscionable, oppressive, unfair, or deceptive to an objectively reasonable person under the circumstances.

75.    As a result of Defendant's violation of FDUTPA, Crema Fina has suffered substantial injury which is not outweighed by any benefit that Defendants' CDV replica produces in the market and could not have been reasonably avoided by Crema Fina as it had no involvement nor knowledge of Defendants' improper plans.

76.    Crema Fina's injuries include, but are not limited to, loss of compensation in the form of loss of sales of the Product, dilution of distinctive quality of the Product, and substantial attorneys' fees and costs expended by Crema Fina to address and remedy Defendants' concerted, malicious unfair and deceptive conduct.

77.    Crema Fina is entitled to prevailing party's attorneys' fees as a result of Defendants' violation of FDUTPA.

**WHEREFORE,** Crema Fina respectfully requests this Court to enter judgment finding that Defendants have violated Florida's Deceptive and Unfair Trade Practices Act and to award Crema Fina all relief available under Florida Chapter 501, including injunctive relief, monetary damages, attorneys' fees and costs, jointly and severally against the Defendants, as well as any further relief this Court deems appropriate and just.

<u>**COUNT III-**</u>
**FLORIDA COMMON LAW UNFAIR COMPETITION**

78.    Crema Fina realleges and incorporates herein by reference the allegations of 1 through 56 as if set forth fully herein.

16

79.    This is a cause of action by Crema Fina against Defendants for common law unfair competition.

80.    Crema Fina's Product and the CDV replica product compete with one another in retail markets in Florida for sales, including in Hillsborough County.

81.    The elements of unfair competition under Florida common law are (1) deceptive or fraudulent conduct of a competitor, and (2) a likelihood of consumer confusion.

82.    Based on the foregoing, Defendants have engaged in deceptive conduct with regard to development, importation, distribution, marketing and sale of the copy-cat, replica CDV competing product in Florida.

83.    Further, Defendants have created a likelihood of consumer confusion based on their malicious and improper trade dress infringement with regard to the Product and its packaging.

84.    As a result of Defendants' actions, Crema Fina has been damaged.

**WHEREFORE,** Crema Fina respectfully requests this Court to enter judgment finding that Defendants, jointly and severally, have engaged in acts of unfair competition with regard to Crema Fina and to award Crema Fina monetary damages as well as any further relief this Court deems appropriate and just.

## COUNT IV-
## CIVIL CONSPIRACY

85.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 56, above as if fully set forth herein and further states.

86.    Defendants each agreed and conspired together to conduct or participate, directly or indirectly, with regard to the conception, production, distribution and sale of the CDV replica product.

87.    The Defendants' actions with regard to the CDV replica product were conducted via unlawful means using Crema Fina's trade dress and deceptive and unfair trade practices and confidential information.

88.    The Defendants intentionally induced, participated in, were aware of, and allowed Lial, as the brand owner identified in TTB filings, to infringe upon Crema Fina's trade dress in the Product with regard to the competing CDV replica product.

89.    The Defendants' actions in connection with the production, sale, shipment, marketing and distribution of the infringing CDV product are not the result of such Defendants failing to take reasonable precautions against infringement, but rather purposeful and knowing participation in the conspiracy and acts of trade dress infringement for their own profit.

90.    Thus, each of the Defendants agreed to the object of the conspiracy, the conception, production, importation, marketing, distribution and sale of the CDV replica product, and each took overt acts in furtherance of the civil conspiracy as alleged herein and otherwise.

91.    As a direct and proximate result of, and by reason of, the activities of Defendants, and their conduct in the civil conspiracy, Crema Fina was injured in its business or property.

92.    Among other things, Crema Fina suffered damages to the extent that Defendants acted together to exert improper influence and unfairly compete with Crema Final via infringing upon its Product trade dress and a copy of its confidential product formula, as set forth above, to cause the substantial decrease in its sales and damage to the business as a going concern.

93.    Crema Fina is therefore, entitled to recover the damages it sustained from Defendants' misconduct and participation in the civil conspiracy and, after an appropriate showing of evidence in the record, assert claims for punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, for damages including but not limited to consequential damages, compensatory damages, costs, and any other relief this Honorable Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Crema Fina requests that the Court enter judgment in its favor and to grant the following relief as to the claims identified above:

1.     That Defendants' aforementioned acts be declared to be acts of infringement of Crema Fina's common law trade dress and that Defendants, their respective shareholders, directors, officers, agents, servants, employees, assigns, privies, affiliated companies and all persons in active concert or participation with them, and all those controlled by them, be preliminarily and permanently enjoined as follows:

a.     From using the Crema Fina Product trade dress at issue on any competing product including, but not limited to, the CDV replica product or any variation thereof in any manner whatsoever;

b.     Requiring Defendants, with respect to the conduct of their business with regard to the infringing CDV replica product:

i.     To cease selling the CDV replica product with the infringing trade dress or any variation thereof that infringes upon the Product's trade dress in any manner whatsoever;

ii.     To disable and/or deliver to the Court, or to a mutually agreeable third party, for impounding during the pendency of this action, all products, advertisements, catalogues, brochures, or other printed material in their possession, custody, or control which display the infringing CDV trade dress;

      iii.     To cancel and withdraw all advertisements, tweets, blogs or other marketing and publicity related activities generated by Defendants containing or displaying in any way the infringing trade dress; and

      iv.     To perform other and such further acts as may be reasonably necessary to eliminate any confusion in the minds of the consuming public as to the nonexistence of any relationship between the trade dress of the Product and that of the competing CDV product;

2.     That Defendants' aforementioned acts be adjudged to be unfair methods of competition and that, by virtue thereof, Crema Fina be awarded the preliminary and permanent injunctive relief set forth in paragraph 1 above;

3.     That Defendants be ordered to account for and pay over to Crema Fina all gains, profits, and advantages derived by it by said use of the infringing trade dress and from its said unfair competition and deception and unfair trade practices; and pay Crema Fina damages arising from the above-described acts in a just amount to be determined at the trial of this action;

4.     That the aforesaid acts of Defendants be adjudged to be unfair competition under the common law of the State of Florida and that Crema Fina be granted injunctive relief and awarded damages as determined at trial;

5.     That this Court find that Defendants have violated the Florida Unfair and Deceptive Trade Practices Act and will continue to use unfair and deceptive trade practices unless enjoined from doing so with regard to the CDV replica product and award Crema Fina damages and its attorney's fees and costs;

6.     That Crema Fina be awarded punitive damages, after a showing of record evidence is presented to the Court and approved by this Court; and,

7.      That Crema Fina awarded such other and further relief as this Court may deem just, proper, and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all matters properly triable by jury under the laws of the State of Florida.

Dated: January 29, 2024.

/s/ Dean A. Kent
DEAN A. KENT
Florida Bar No. 0307040
TRENAM LAW
dkent@trenam.com /ac@trenam.com
Bank of America Plaza
101 East Kennedy Blvd., Suite 2700
Tampa, FL 33602-5150
Telephone: (813) 223-7474
Fax: (813) 229-6553
Attorneys for Crema Fina

OMB No. 1513-0020

| FOR TTB USE ONLY | DEPARTMENT OF THE TREASURY |
|---|---|
| | **ALCOHOL AND TOBACCO TAX AND TRADE BUREAU** |
| **TTB ID** | **APPLICATION FOR AND** |
| 21280001000604 | **CERTIFICATION/EXEMPTION OF LABEL/BOTTLE APPROVAL** |
| | (See Instructions and Paperwork Reduction Act Notice on Back) |

| 1. REP. ID. NO. *(If any)* | CT | OR |
|---|---|---|
| | 87 | 52 |

## PART I - APPLICATION

| 2. PLANT REGISTRY/BASIC PERMIT/BREWER'S NO. *(Required)* | 3. SOURCE OF PRODUCT *(Required)* | 8. NAME AND ADDRESS OF APPLICANT AS SHOWN ON PLANT REGISTRY, BASIC PERMIT OR BREWER'S NOTICE. INCLUDE APPROVED DBA OR TRADENAME IF USED ON LABEL *(Required)* |
|---|---|---|
| FL-I-21541 | ☐ Domestic  ☑ Imported | Mesk & Co.  6606 SW 131 PATH UNIT 1809-A  Miami FL 33183 |

| 4. SERIAL NUMBER *(Required)* | 5. TYPE OF PRODUCT *(Required)* | |
|---|---|---|
| 21CVIE | ☑ WINE  ☐ DISTILLED SPIRITS  ☐ MALT BEVERAGE | |

| 6. BRAND NAME *(Required)* | 8a. MAILING ADDRESS, IF DIFFERENT |
|---|---|
| LIAL | |
| **7. FANCIFUL NAME** *(If any)* | |
| VIE CREAM FLAVOR | |

| 9. FORMULA | 10. GRAPE VARIETAL(S) *(Wine Only)* | 14. TYPE OF APPLICATION *(Check applicable box(es))* |
|---|---|---|
| 1412173 | N/A | a. ☑ CERTIFICATE OF LABEL APPROVAL |
| **11. WINE APPELLATION** *(If on label)* | | b. ☐ CERTIFICATE OF EXEMPTION FROM LABEL APPROVAL "For sale in _____ only" (Fill in State abbreviation.) |
| **12. PHONE NUMBER** | **13. EMAIL ADDRESS** | c. ☐ DISTINCTIVE LIQUOR BOTTLE APPROVAL. TOTAL BOTTLE CAPACITY BEFORE CLOSURE ____ _____ (Fill in amount) |
| (305) 244-0231 | | d. ☐ RESUBMISSION AFTER REJECTION TTB ID. NO. _____ |

15. SHOW ANY INFORMATION THAT IS BLOWN, BRANDED, OR EMBOSSED ON THE CONTAINER (e.g., net contents) ONLY IF IT DOES NOT APPEAR ON THE LABELS AFFIXED BELOW. ALSO, SHOW TRANSLATIONS OF FOREIGN LANGUAGE TEXT APPEARING ON LABELS.

## PART II - APPLICANT'S CERTIFICATION

Under the penalties of perjury, I declare; that all statements appearing on this application are true and correct to the best of my knowledge and belief; and, that the representations on the labels attached to this form, including supplemental documents, truly and correctly represent the content of the containers to which these labels will be applied. I also certify that I have read, understood and complied with the conditions and instructions which are attached to an original TTB F 5100.31, Certificate/Exemption of Label/Bottle Approval.

| 16. DATE OF APPLICATION | 17. SIGNATURE OF APPLICANT OR AUTHORIZED AGENT | 18. PRINT NAME OF APPLICANT OR AUTHORIZED AGENT |
|---|---|---|
| 10/07/2021 | (Application was e-filed) | mauro varena |

## PART III - TTB CERTIFICATE

**This certificate is issued subject to applicable laws, regulations and conditions as set forth in the instructions portion of this form.**

# EXHIBIT A

| 19. DATE ISSUED | 20. AUTHORIZED SIGNATURE, ALCOHOL AND TOBACCO TAX AND TRADE BUREAU |
|---|---|
| 10/20/2021 | *Nicole Candelora* |

| FOR TTB USE ONLY | |
|---|---|
| **QUALIFICATIONS**<br><br>TTB has not reviewed this label for type size, characters per inch or contrasting background. The responsible industry member must continue to ensure that the mandatory information on the actual labels is displayed in the correct type size, number of characters per inch, and on a contrasting background in accordance with the TTB labeling regulations, 27 CFR parts 4, 5, 7, and 16, as applicable.<br><br>**STATUS**<br><br>THE STATUS IS APPROVED.<br><br>**CLASS/TYPE DESCRIPTION**<br><br>DESSERT FLAVORED WINE | **EXPIRATION DATE (If any)** |

AFFIX COMPLETE SET OF LABELS BELOW

Image Type:

Brand (front) or keg collar
Actual Dimensions: 4 inches W X 6 inches H



Image Type:
Back
Actual Dimensions: 4 inches W X 5 inches H

LIAL
GOVERNMENT WARNING:(1) According to the Surgeon General, women should not drink alcoholic beverages during pregnancy because of the risk of birth defects. (2)Consumption of alcoholic beverages impairs your ability to drive a car or operate machinery, and may cause health problems.
Consume within 6 months of opening. shake well. best served chilled or on the rocks. do not mix with acidic drinks. refrigerate after opening.
May contain nautrually ocurring sulfutes.
15% alcohol by volume
750 ml
IMPORTED BY:
MESK & CO
MIAMI, FL 33183, USA
MANUFACTURED BY:
LIAL DRINKS,
S.L. GRANADA, SPAIN.
export@espadafor.es
TFNO: +34 958 800136
8 428259 103624

**TTB F 5100.31** (06-2016) PREVIOUS EDITIONS ARE OBSOLETE